RAYMOND M. ARD, Employee-Plaintiff v. OWENS-ILLINOIS, Self-Insured Employer, and AIG CLAIMS MANAGEMENT, Administrator, Defendants

No. COA06-376

(Filed 3 April 2007)

**1. Workers' Compensation— compensable injury—injury by accident**

The full Industrial Commission did not err in a workers' compensation case by finding and concluding that plaintiff incurred compensable injuries on 14 July 2001 and 23 December 2001, because adequate evidence was presented that: (1) plaintiff suffered two personal injuries by accident; (2) each injury arose during the course of plaintiff's employment as a stock handler; and (3) each injury arose out of plaintiff's employment at defendant employer.

**2. Workers' Compensation— disability compensation—pre-existing condition**

The full Industrial Commission did not err in a workers' compensation case by finding and concluding that plaintiff was entitled to disability compensation as a result of the 22 May 2002 incident even though plaintiff had a pre-existing condition, because: (1) the alleged "rule" defendants cite from *Morrison v. Burlington Industries*, 304 N.C. 1 (1981), regardless of its validity, does not apply in this case since plaintiff's previous back injury was job-related; and (2) it is well-settled law that an employer takes the employee as he finds him with all his pre-existing infirmities and weaknesses.

Appeal by defendants from the opinion and award entered 14 December 2005 by Bernadine S. Ballance, Commissioner, for the Full Commission. Heard in the Court of Appeals 1 November 2006.

*Brooks, Stevens, & Pope, P.A., by Michael C. Sigmon, for defendants-appellants.*

*Poisson, Poisson, & Bower, PLLC, by Fred D. Poisson, Jr., for plaintiff-appellee.*

ELMORE, Judge.

A full panel of the North Carolina Industrial Commission (Full Commission) awarded Raymond M. Ard (plaintiff) payments for dis-

ARD v. OWENS-ILLINOIS

[182 N.C. App. 493 (2007)]

ability and medical expenses on 14 December 2005. It is from this order and award that Owens-Illinois (Owens) and AIG Claims Management (together, defendants) appeal.

Plaintiff was first employed by Owens on 8 March 2001 as a stock handler, and later worked in the assembly department. The Full Commission found that "[a]s a stock handler, Plaintiff was required to repetitively move forty-pound boxes. Three different lines fed plastic deodorant caps into boxes, which as they were filled, had to be taped and moved to a pallet. . . . As boxes were filled, another box was placed in position for filling." Plaintiff testified that his job as a stock handler was "probably the hardest labor job [he had] ever had, and anybody who would work it for two weeks would be hurting and sore." Although plaintiff had previously worked in construction pouring concrete, he found the Owens job to be more taxing because "the machines don't stop," and "you're constantly, all night, working on them."

On 11 May 2001, plaintiff sought treatment for a sore back, reporting that his pain had increased to a severe level. He testified that this back pain had developed gradually. He received treatment from two chiropractic doctors, and did not miss any work as a result of the back pain.

Several months later, on 14 July 2001, plaintiff experienced a sharp pain on the right side of his lower back, above his hip and below his beltline. He immediately notified his supervisor that he had hurt his back. Neither plaintiff nor his supervisor filed an injury report. On 16 July 2001, plaintiff was treated by Dr. John Y. Karl after presenting with low back pain that had been radiating down his left leg and foot for the previous few days. Dr. Karl treated plaintiff conservatively, releasing plaintiff from his care on 6 September 2001.

In September, 2001, plaintiff's supervisor assigned plaintiff to a job with lighter duties. This job involved working with a computer, and plaintiff proved unable to perform that job. Plaintiff returned to his heavy labor position at his own request.

Plaintiff again sought treatment from Dr. Karl on 17 December 2001, complaining of pain in his left buttock and left leg. A 20 December 2001 MRI revealed degenerative disk disease and multiple herniations at L1-L2, L4-L5, and L5-S1.

Plaintiff suffered another injury at Owens on 23 December 2001 when lifting a forty-pound box filled with empty deodorant caps. He

described this incident as "just the same accident" as had occurred in July, 2001, in "the same place right there in my back again." He testified that this pain felt "[l]ike a sharp, hot knife in my back above my hip." Plaintiff again reported his injury to his supervisor, who filled out an injury report.

Plaintiff returned to Dr. Karl for treatment, and was referred to Dr. Dion J. Arthur, an orthopedic surgeon. Dr. Arthur examined plaintiff on 10 January 2002, and recommended physical therapy and epidural injections to relieve plaintiff's back pain. Plaintiff then took a medical leave of absence from work until 25 February 2002, at Dr. Arthur's suggestion.

By 21 February 2002, plaintiff "felt strong" and wanted to return to work. Dr. Arthur released plaintiff to work without restriction. However, plaintiff again injured his back on 22 May 2002. He and another employee were lifting a ninety to one hundred pound box together, when plaintiff felt an immediate, stabbing pain in his lower back that was "five times worse" than any pain that he had experienced before. This pain occurred in the same area as his 14 July 2001 and 23 December 2001 injuries. Plaintiff underwent back surgery on 11 June 2002. Dr. Dion testified that he "felt that [plaintiff] would not be a suitable candidate for employment that involved frequent waist bending, lifting, twisting, stooping and straining," and that plaintiff should limit his lifting to "less than 15 pounds . . . and preferably in distributed weight with the upper extremities." Because Owens did not have any work available within those restrictions, plaintiff sought other work within those restrictions, but has not been successful. The Full Commission found that "[p]laintiff's efforts to find suitable employment have been reasonable," and concluded that plaintiff was "unable to find suitable employment within his medical restrictions and due to his educational and vocational limitations."

In its order and award, the Full Commission found that "[p]laintiff suffered an injury arising out of and in the course of his employment on July 14, 2001, December 23, 2001 and May 22, 2002, as a direct result of a specific traumatic incident of the work assigned by Defendant-Employer." The Full Commission ordered defendants to "pay compensation to Plaintiff for total disability at the rate of $324.09 per week from December 31, 2001 to February 22, 2002 and from May 23, 2002, and continuing until further order of the Commission. The accrued compensation shall be paid in lump." Defendants were also ordered to pay all of plaintiff's medical

expenses arising from his injuries on 14 July 2001, 23 December 2001, and 22 May 2002.

**[1]** Defendants first argue that the Full Commission erred in finding and concluding that plaintiff incurred compensable injuries on 14 July 2001 and 23 December 2001. Defendants allege that plaintiff did not suffer any disabling physical injury as a result of these 2001 injuries. We disagree.

"This Court's review is limited to a consideration of whether there was any *competent* evidence to support the Full Commission's findings of fact and whether these findings of fact support the Commission's conclusions of law." *Johnson v. Charles Keck Logging*, 121 N.C. App. 598, 600, 468 S.E.2d 420, 422 (1996) (citing *McLean v. Roadway Express*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982)). This Court has stated that "so long as there is some 'evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary.'" *Shah v. Howard Johnson*, 140 N.C. App. 58, 61-62, 535 S.E.2d 577, 580 (2000) (quoting *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980)).

The following three conditions must precede "the right to compensation pursuant to the Workers' Compensation Act . . . : (1) the claimant suffered a personal injury by accident; (2) such injury arose in the course of the employment; and (3) such injury arose out of the employment." *Bondurant v. Estes Express Lines, Inc.*, 167 N.C. App. 259, 265, 606 S.E.2d 345, 349 (2004) (citing *Barham v. Food World*, 300 N.C. 329, 332, 266 S.E.2d 676, 678 (1980)).

> With respect to back injuries, however, where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, "injury by accident" shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident.

N.C. Gen. Stat. § 97-2(6) (2005). Furthermore, "[a]ggravation of a pre-existing condition caused by a work-related injury is compensable under the Workers' Compensation Act." *Moore v. Federal Express*, 162 N.C. App. 292, 297, 590 S.E.2d 461, 465 (2004). In *Moore*, the plaintiff suffered a back injury in 1992, and then a second back injury in 1997. *Id.* at 298, 590 S.E.2d at 465. This Court held that "although

there may have been some causal connection to plaintiff's original 1992 injury, plaintiff's current back problems were a result of the 3 April 1997 incident, which substantially aggravated his pre-existing back condition." *Id.* Thus, "plaintiff's injury was the result of a specific traumatic incident occurring in the course of plaintiff's employment, and not simply a change in his condition that was a natural consequence of his prior injury." *Id.*, 490 S.E.2d at 466.

The Full Commission's findings and conclusions regarding plaintiff's compensable injuries on 14 July 2001 and 23 December 2001 are supported by competent evidence. In his answers to prehearing interrogatories, dated 4 October 2002, plaintiff stated that he "injured [his] back on July 14, 2001 while working for Owens-Illinois." Dr. Karl, who treated plaintiff two days after the incident, testified that plaintiff told him that the pain had "been going on for approximately two to three days, when [plaintiff] picked up a heavy object, approximately a forty pound box." Dr. Arthur testified that by reference to Dr. Karl's notes, he could state that plaintiff had injured himself on July 14.

After plaintiff's 23 December 2001 injury, his supervisor filled out an accident report stating that plaintiff had injured the right side of his lower back "stacking finished goods boxes on line 61." In response to this injury, Dr. Karl recommended plaintiff be restricted to "light duty for the next two weeks."

Adequate evidence was presented to the Full Commission to meet the three prongs of the "compensable injury" rule outlined above. First, plaintiff suffered two personal injuries by accident; second, the injury arose during the course of plaintiff's employment as a stock handler; and third, the injury arose out of plaintiff's employment at Owens. Accordingly, we hold that the Full Commission did not err in its findings of fact and conclusions of law.

[2] Defendants next argue that the Full Commission erred in finding and concluding that plaintiff was entitled to disability compensation as a result of the 22 May 2002 incident. The thrust of defendants argument is that on 22 May 2002, plaintiff was disabled by a pre-existing condition, and thus is not compensable. Again, we disagree.

Defendants rely on *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E.2d 458 (1981), to support their assertion that plaintiff's 22 May 2002 injury is not compensable because the underlying pre-existing condition was disabling. Our Supreme Court, in *Morrison*, stated that:

[w]hen a pre-existing, *nondisabling, non-job-related* condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment . . . so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent.

*Id.* at 18, 282 S.E.2d at 470. From this single sentence, defendants mistakenly conclude that if a pre-existing condition is aggravated during employment, leading to disability, the disability can only be compensable if the pre-existing condition was not disabling. However, when we view this single sentence, highlighted by defendants in their brief, the language clearly states that the pre-existing condition must be both nondisabling *and* non-job related to be compensable. The *Morrison* court placed emphasis on both modifiers, and we read "nondisabling" and "non-job-related" together, as they were written. Thus, the alleged "rule" defendants cite from *Morrison*, regardless of its validity, does not apply in this case because plaintiff's previous back injury was job-related. Throughout its text, *Morrison* repeatedly recites the well-settled law that "an employer takes the employee as he finds her with all her pre-existing infirmities and weaknesses." *Id.* If these infirmities or weaknesses are derived from previously compensable disabilities, the employee is not precluded from suffering a subsequent compensable disability. *See, e.g., Poe v. Raleigh/Durham Airport Authority*, 121 N.C. App. 117, 119-20, 464 S.E.2d 689, 690-91 (1995) (describing plaintiff's compensable injury to his lower back, which was succeeded by *four* separate re-injuries, each of which was a compensable injury). Accordingly, defendants' final argument is without merit.

Affirmed.

Judges HUNTER and McCULLOUGH concur.